CONTINENTAL INSURANCE COMPANY OF NEW YORK
CITY

v.

CULLEN C. ALLEN ET AL.

*Marine Insurance—Issue and Delivery of Certificate after Loss—Agency
—Notice of Loss—Payment of Premium—Instruction.*

In an action upon a certificate of marine insurance, issued and delivered
after the loss of the vessel insured, to take effect as of an earlier date, it is
*held:* That the agent who procured the insurance can be regarded only as
the agent of the plaintiffs; that he does not appear to have had any author-
ity to make any contract on behalf of the defendant; and that an instruction
assuming that the agent acted for the defendant, was improperly given for
the plaintiffs.

[Opinion filed May 16, 1888.]

APPEAL from the Superior Court of Cook County; the
Hon. JOHN P. ALTGELD, Judge, presiding.

This was a suit by appellees against the insurance company,
appellant, upon a certificate bearing date November 20, 1884,
of marine insurance, in the sum of $4,000, upon the hull of the
tug Alice E. Getty, subject to the conditions of the company's
general "Hull Policy," whereby the defendant insured the
plaintiffs on said tug in said sum from November 19 to No-
vember 30, 1884.

It appears that about 8 o'clock in the morning of said
November 19th, the said tug started on a towing voy-
age from Muskegon to the port of Pentwater, both ports
being upon the eastern shore of Lake Michigan and about
forty miles apart, but connected by direct communications
by railroad, telegraph and telephone; that one Lewis was
an agent in the fire insurance business at Muskegon, had
been such for some five years, and had done business
with some of the plaintiffs as such; that on the evening
of said November 19th, Allen, one of the plaintiffs, and famil-

iarly acquainted with Lewis, called upon the latter to have him procure marine insurance upon said tug from that day to the 30th of the same month, in the sum of $4,000; that Lewis then made an estimate of what the premium would be and informed Allen that it would amount to $52, which Allen paid to him; that about 11 o'clock A. M., of November 20th, Lewis, by telegram, employed the office of one Littlefield, an insurance agent and broker in the city of Chicago, to place said insurance, and that between that time and 3 P. M. several communications by telegraph passed between them, some relative to the premium, but Lewis insisting that the risk should begin on the 19th day of the month; that the business on behalf of Littlefield's office was conducted by Parker, a clerk of the latter; that application having been made by Parker to the agent of the defendant in Chicago, of the name of Rispin, some time after noon of said day, and the rate of premium being agreed upon, which amounted to $60, but which was not paid, Rispin made out a certificate by which the risk was to begin at and from 3:30 o'clock of that day, but that not being satisfactory to Parker, whose instructions were to have it begin on the 19th instead of the 20th, he insisted upon the certificate being changed so as to attach on the 19th; that the certificate was finally so changed by Rispin but not then delivered.

It appears that the tug met with a disaster about 3 o'clock of the morning of said 20th of November, by reason of violent wind, high sea, and her tow line being carried from the deck and becoming entangled in the wheel of the boat, so that in the early morning of that day she was stranded and wrecked upon the beach at said Pentwater.

It appears that after the communications between Lewis and the office of said Littlefield, by which it was ascertained that the premium would be $60 instead of $52, Allen paid to him the difference, but Lewis kept the whole, and no premium was ever paid to defendant, nor was there evidence tending to show that the defendant gave any credit to him in respect thereto.

There was no evidence tending to show that Lewis ever was

the actual or apparent agent of the defendant company, and upon the latter offering to prove that he was not, the court rejected the evidence.

There was evidence tending to show that the plaintiff Allen knew of said disaster to the tug, and by the exercise of reasonable diligence might have notified the defendant thereof, before said certificate was delivered by Rispin, who had no such notice, and the evidence tended to show that Parker, who acted for and on behalf of plaintiff, in procuring said insurance, had read an account of said disaster to said tug in a Chicago morning paper before said certificate of insurance was delivered by Rispin, and that he made no mention of it to the latter. To avoid the effect of such state of things, the plaintiffs' counsel asked, and the court gave an instruction to the jury upon the theory that a valid contract of insurance was effected on the 19th of November between plaintiffs (through Allen) with Lewis and the payment of the premium to him, to which the written policy would attach by relation. It reads: "The court instructs the jury that if they believe from the evidence that the plaintiffs, or some one of them, made application for marine insurance on the tug 'Alice E. Getty' to an insurance agent or agents at Muskegon, in the State of Michigan, on the 19th day of November, 1884, and that said agents agreed to furnish such insurance, and that subsequently, and on the 20th day of November, 1884, the plaintiffs paid the said agents the premium for the insurance covered by the certificate in question, and that afterward said insurance agents delivered the insurance certificate in question to the plaintiffs, and that at the time of the payment of said premium the plaintiffs had no notice of the stranding of the tug mentioned in said certificate, or that they did not receive notice of the stranding of said tug until it was too late to notify the agent of the defendant of such fact before said insurance had been placed and accepted, then said certificate, although the jury may believe, from the evidence, that it was issued after the stranding of said tug, still was binding on the defendant, and the plaintiffs are entitled to recover the amount due thereon, with interest at six per cent. per annum from the ex-

piration of sixty days from the time the proofs of loss were furnished or tendered to the defendant or its agent, together with two-thirds of such expenditure and outlays as the plaintiffs made or incurred in their attempt to save said tug, provided the jury further believe, from the evidence, that the immediate cause of the stranding of the said tug was one of the perils insured against, and the said tug became in consequence thereof a total loss."

The jury found for plaintiffs, assessing their damages at $5,348.47. The court, overruling defendant's motion for a new trial, gave judgment on the verdict, from which the latter appealed to this court.

Messrs. ROBERT REA and JAMES C. McSHANE, for appellant.

Messrs. SCHUYLER & KREMER, for appellees.

McALLISTER, J. If Lewis, at the time Allen applied to him for marine insurance upon the vessel in question, on the evening of November 19, 1884, and before the loss, had been the agent of the insurance company, defendant herein, and had the actual or apparent authority to bind the defendant by a contract of insurance, and, as such, had entered into such a contract on behalf of the defendant at that time and received the premium, then such contract would have been binding, although the vessel had been lost intervening that time and that of the making of the certificate of insurance. Perkins v. The Washington Ins. Co., 4 Cow. 645.

In that case the policy or certificate, even if not delivered until after the loss, would take effect by relation, as of the time when the premium was paid and the contract concluded, provided, of course, that the certificate or policy contained no terms inconsistent therewith. Lightbody v. North American Ins. Co., 23 Wend. 18; Jackson v. McCall, 3 Cow. 75.

It was substantially upon such a theory of the law that the instruction given on behalf of the plaintiffs (and set out in our statement of the case), was based. But the difficulty with it is, that upon the facts of the case, as they were developed by

the evidence, no such rule of law can arise. In the light of the evidence Lewis can be regarded only as the agent of the plaintiffs. There was no evidence in the case tending to show that he possessed any authority, actual or apparent, to make any contract of insurance on its behalf. Not only that, but to repel any inference of that kind, the defendant offered to prove by direct testimony the want of all authority on the part of Lewis to act for the defendant, and the trial Judge rejected it.

If Lewis was the agent of plaintiffs and not of defendant, as we have stated, then it is clear that the transaction between him and Allen on the evening of November 19th, at Muskegon, as to which the defendant was, in no respect, constructively or otherwise, a party, could have no effect whatever in conferring a right upon plaintiffs, or creating a liability as against the defendant.

The instruction was, therefore, a plain misdirection of the jury by the court, and was prejudicial to the defense which the defendant had a right to make, viz., that no contract was consummated with defendant until the delivery of the certificate of insurance, prior to which the loss occurred which was known to plaintiffs and unknown to defendant, and by the former and their agents concealed from the latter. 1 Parsons on Marine Ins. 469, and cases in notes.

For giving that instruction the judgment must be reversed and the cause remanded. *Judgment reversed.*